of Capital Murder and Sentenced to Life in Prison. We're here today to discuss whether the state court unreasonably determined that Ms. Dodson was not prejudiced by multiple references to polygraph examinations and that she should be convicted to stop her from having another child with an inmate. I want to point out at the outset, what sets this case apart from all the other ineffective assistance cases that come through this system and get really little to no attention. Why did this jury deliberate 15 hours over 3 days and report that it was hopelessly deadlocked at the end of the first 2 days before it convicted? And there are 4 reasons I submit to you. First, the child had a documented history of breathing problems and had been diagnosed with RSV. So it is not inconceivable that the child could have stopped breathing in her sleep. Second, the cause of death and the manner of death were undetermined based on the physical findings at autopsy. And the pathologist went back and amended her findings only after the detective obtained Dodson's confession. So if you look at the scientific evidence, there is zero evidence of this child dying by a criminal act. Third, and extremely important, the interrogation... Zero evidence, huh? Zero evidence that the child died by criminal means. No, no, no. I said if you look at the physical findings at autopsy, there was no medical evidence in the autopsy to support death by a criminal act. And that's why it came back undetermined. You didn't mean in your initial statement that our court gives little or no attention to cases before us. No, no. What I'm saying is that get argument and get the kind of attention this one's getting. I'm saying what makes this case stand out? I think this case has especially favorable facts and procedural history. Correct. I'm saying that... In terms of careful look. Realistically... But you certainly didn't mean to say that we don't give careful look to the other cases. The majority of IIC cases really don't have much legs to stand on. So I'm not complaining with the result. I'm just saying that's the way it is. Supposedly, the interrogation in this case was not recorded. Now, a jury living in the present times could logically conclude... I mean, who's ever heard of an interrogation in a capital murder in a police station not being recorded in a major metropolitan area? It would be absolutely reasonable for a juror to conclude that those interrogations are recorded and when the recording supports the voluntariness of the confession, it's turned over to the police. And when the recording does not, when it shows either physical threats or verbal abuse or psychological manipulation that results in a confession such that it would be inadmissible, it gets rerun and taped over. So this jury knew that the Dallas Police Department with an officer who'd been on the force for 38 years, 18 years, the head of child abuse claimed, I didn't record the interrogation. And they did not have to accept that. And finally, Ms. Dodson in her testimony had a plausible explanation for how the detective induced a false confession. He lied to her that the autopsy showed the child was suffocated and basically said, if your boyfriend didn't do it, then you had to have done it because there were only two of y'all in the apartment. Second, he did the, oh, I'll get you help if you admit it. We can get you help, but you've got to come clean and show remorse and admit it. Third, she said, I trusted and respected police officers because my father was a police officer. And finally, she said, I confessed because I was depressed, I hadn't been sleeping, I did feel responsible for my child's death, and that's why I confessed. And so let me address the elephant in the room with regard to the prejudice calculus in this case, and that is the issue of the confession. Social science research in the past decade regarding false confessions buttressed by the results of DNA testing and advances in DNA testing prompted the United States Supreme Court to observe recently that the result can induce a frighteningly high percentage of people to confess to crimes they never committed. Quote, Justice Souter writing for the majority in Corley v. United States, 2009, echoed again by Justice Sotomayor writing for the majority in JDB v. North Carolina in 2011. According to the most recent research of the DNA exonerations that we've had in this country, 88 have involved false confessions, the most famous of which, I guess, would be the Central Park Five. Five people who separately confessed on videotape to sexually assaulting the jogger in Central Park, and they spent, what, 15, 20 years in prison, and then the DNA comes back and it shows it was a single guy that did it, and they convicted five guys and had detailed confessions. If there'd been no DNA in that case, they'd have been there forever. So what's the lesson we learned from that? What's the lesson the system has learned from the DNA exonerations and false confessions? I submit to you, absolutely nothing. The system has learned nothing at all, with the exception that a few state legislatures have responded by requiring all custodial interrogation of persons suspected of serious felonies be electronically recorded. Now, you know, you've been arguing for, what, four minutes, and you need to get to the issues that are on this appeal. I understand that if you had been trying this case, it would have been different, okay? You've made that point well. Now you need to deal with what we've got here. Pardon me for . . . I do, and I do this as a backdrop because I think this factors into prejudice. I'm not just doing it to do it. So let's hit the ground running then on the polygraph examination. Defense counsel knew before trial that the detective had offered polygraphs to Ms. Dodson and her boyfriend. That's not admissible under Texas law. It's extremely prejudicial. He says, I didn't file a motion in limine because I didn't expect the state to elicit it. The detective then testifies on direct examination. In response to a question from the prosecutor, I asked Ms. Dodson if she would take a polygraph concerning if the child had been smothered. So there's an objection, instruction disregard, mistrial denied, no motion in limine to preclude any additional references to polygraph. The boyfriend then gets on the stand, testifies without objection. I volunteered to take a polygraph during interrogation. The detective asked me. I said, I do it. I'll take one right now. And the lawyer takes the position, well, I didn't object because I didn't want to draw the jury's attention . . . Well, the judge, to his credit, I mean, I don't know if it's a him or a her, but anyway, to his credit, said, instructed the jury that polygraph evidence is not reliable or not accepted in Texas. So the jury had been instructed that there's a problem with polygraph exams. And that's not the problem. The problem is . . . I know it's not, but it's a blessing. Well, so what does that tell the jury? That tells the jury either Ms. Dodson took it and failed it, but you're not going to get to hear that because it's unreliable, or she refused to take it, but her boyfriend did volunteer to take it, so she's got something to hide and he doesn't. Whichever way you slice that, the jury had a very prejudicial inference to be drawn. Now, the state court found it would have granted a motion in limine. Had it granted the motion in limine, that would have reduced the likelihood that polygraph would have been mentioned, and that the jury could have inferred that Ms. Dodson refused the polygraph, and that negatively impacted her credibility before the jury. But that it was reasonable not to file a motion in limine because the evidence was clearly inadmissible, and it was reasonable not to object to avoid drawing attention to the subject after he'd already objected and drawn attention to the subject. So I'm . . . But what's your . . . let's focus in on . . . what's your standard of review here? Well, it's . . . It's not an AEDPA issue, right? It's the AEDPA standard of review, whether . . . Right. So you need to zing in on . . . this is not up on direct appeal, so . . . I understand. The Supreme Court sent one back to the Sixth Circuit last week, a procurium, as they keep sending them back to the Sixth Circuit, in a procurium saying, what part of AEDPA and all our jurisprudence didn't you get? I mean, they rolled it out, I think, I mean, just like lickety-split, a few lines. So, I mean, we've got umpteen cases, lots of these cases, notwithstanding your opening remark, come to us on state habeas review. So we review a lot of ineffective assistance counsel, with ten fingerprints on it, with great examination of them, okay? So we do look at them quite vigorously, to the point. But the point is, you need to convince us with the standard of view you have, how you get over, notwithstanding your argument about, you know, what happened, da-da-da-da-da, because that's the standard that we're looking at, and the Supreme Court says, you know, do it. So, help me at least understand how you get over that hurdle, that even if the state court's determination was erroneous or should have been something different, how do we say that you're entitled to relief? Justice Stewart, I believe that it's unreasonable for a defense lawyer trying a capital murder case to assume a detective will not mention inadmissible evidence absent an order in limine, and based on that . . . It's not whether it's unreasonable, but you've got two prongs. You've either got to show that it's an unreasonable application of law, as determined by the United States Supreme Court. The Supreme Court sent the case back last week to the Sixth Circuit, because the Sixth Circuit keeps looking at Sixth Circuit law, and the Supreme Court says, what part of this don't you understand? You've got to be able to say it's unreasonable under Supreme Court law. So, the question to you is, what Supreme Court cases are you relying on? We know Strickland's a linchpin, that on your facts, as you have pointedly, persuasively framed them, get you to the point of this court being able to say the state court unreasonably erred in interpreting Supreme Court law. That's at least what I'm trying to listen for. Let's tackle that bull right now. You're never going to have a U.S. . . . never. You probably will never have a Supreme Court case telling you whether a particular error of defense counsel is unreasonable and prejudicial in a given case. They don't accept cases to decide that kind of issue. You know what? At some point, with the green light on, a yellow light, or a red light, you're going to have to answer my question. And I am. What I'm saying is . . . You're going to have to answer my question. I'm not interested in . . . I'm not being combative with you. I want to move to the case. But I'm saying, I didn't say there was a white cow with a pink tail in terms of facts. I'm telling you what case are you relying on because I know what the other side is going to come up and say. You haven't done it. What is the case? Is it Harrington? Is it Strickland? What is the case you're saying this state court in Texas erred in interpreting what the Supreme Court has said about either the error prong or the praise prong? That's all I'm asking. You can explain it, as you would say to a witness. Give me your answer and then you can explain. I'm relying on Strickland. As I say in the brief, Strickland sets out the construct for an IEC claim, deficient performance, prejudice. The performance is deficient under state law. If you do or fail to do something that a reasonably competent lawyer would not do. And then prejudice is determined based on the Strickland construct, reasonable probability the outcome of the different interpreted is undermining confidence in the verdict. Are you trying to say that it's an unreasonable determination of the facts or an unreasonable application of clearly established federal law? Are you saying both? I'm saying both. I'm saying it's an unreasonable determination of the facts to find that the lawyer had the strategic reason not to file the motion in limine and then not to object. Assuming, arguendo, that we agree that that's an unreasonable interpretation of facts, you can never get through the prejudice hurdle because of the confession, can you? Well, now that's what... I know you did this whole thing about confessions in America and public policy, but I'm talking about in our case law, you're stuck, aren't you? Well, I don't think so because you have to factor in that this jury stayed out three days and was hopelessly deadlocked after the first two and it had to have been over the confession. I mean, that was the issue in the case. Without the confession, the state couldn't have gotten to the jury. Okay. On Chief Judge Stewart's question, unreasonable application of clearly established federal law, there is not a Supreme Court case that says that it's unreasonable to find that failing to do the motion in limine is such... Is there? Correct. And that's why I'm saying... So the only leg you really have is unreasonable determination of the facts, that the court made a factual determination that was incorrect about strategy. Well, I do agree with that. I'm trying to get you through AEDPA with the, what is your best AEDPA argument and to see if it has legs. Well, as I've said, there was an unreasonable determination of the facts with regard to the quote, strategic quote, basis for the absence of a motion in limine and the absence of an objection. But in addition to that, it's, in my view, an unreasonable application of Strickland to say that these type of deficiencies or this error was not deficient. But at the risk of that, let me jump over to the letter to the jail inmate about wanting to have his baby, which the prosecutor cross-examined Ms. Dodson about, argued that the jury should convict her because it had a responsibility to keep her from having a child with a jail inmate. And the state court found the letter was inadmissible, reflected poorly on her character. The prosecutor exploited it during argument. But although the decision was close, there was no prejudice because the jury notes focused on the time of the 911 call and the medical records and didn't mention the letter. That is likewise an unreasonable application of Strickland and an unreasonable determination of the facts. And the court did not consider prejudice stemming from the cross-examination of the argument along with the polygraph examination. It looked at both of them differently. So what you have here is the jury notes don't inform a prejudice analysis. It only shows the jurors were in disagreement about the time of the 911 call and the medical records. They had no reason to ask about the letter, which was uncontroverted, in evidence, sitting on the table in front of them, spoke for itself. And I commend to you the analysis of this court in White v. Thaler, where they reversed under 2254 in the AEDPA construct on an IEC case, where the state brought in testimony that the deceased was pregnant and the fetus died, saying that afforded an improper emotional basis to convict. So here I have the finding of deficient performance in state court. And even if forgetting the polygraph for a moment, the prejudice analysis of the state court was inadequate because it did not consider the effect of that argument. Now, I do want to say one thing about prejudice before I take a break. The issue has arisen about whether Strickland requires a cumulative prejudice analysis. And I would suggest to you that this court has already resolved that issue. Forget White v. Thaler. Let's go back to Moore v. Johnson from 1999. Justice DeMoss wrote the opinion, Judge DeMoss with Judges Smith and Garza on the panel, and I'll read you a couple of excerpts from it. The question is whether the cumulative errors of counsel rendered the jury's findings, either as to guilt or punishment, unreliable. We are unable to state that any particular deficiency in trial counsel's performance at the guilt phase or even the cumulative effect of all deficiencies at the guilt phase is sufficient to render the guilty verdict unreliable. The district court reached a different result with respect to the punishment phase of the trial, holding that the aggregate effect of counsel's deficient performance resulted in a certain death sentence. We conclude that counsel's deficient performance, including counsel's performance during the guilt phase of the trial, prejudiced the outcome of the punishment phase. So since that is binding circuit precedent from 1999, I really don't see the cumulative prejudice issue being in play. But I'll visit with you all later if my opponent disagrees. All right. Thank you, sir. Appreciate your rebuttal. Mr. Jones. May it please the Court. This case is governed by the AEDPA re-litigation bar, and the issue is not whether—the issue is whether the state court acted reasonably. Now, under Richter, for ineffective assistance claims, the question before the federal court is not whether counsel's actions were reasonable, but whether the state court was reasonable in so finding. There's the—for federal court purposes, there's double deference, deference to the counsel and deference to the state court. And the state court found one of them was unreasonable. He found—the state court found deficiency. Right. That's correct. But no federal court found deficiency. Federal court merely assumed deficiency and said that the outcome, the judgment, the result was reasonable. Do you still maintain your position that we don't do cumulative error in this circuit? No. I don't do—I don't do that. Okay. So you— I mean, if I said that in my brief, I—that statement is inoperative. That's incorrect in your brief. I would say— That we don't really do cumulative prejudice. That's not an accurate statement of our precedent. Yes. Well, I would say in white, the court did not grant relief based on— But we had previously recognized cumulative prejudice. Certainly recognized the concept thereof. Okay. Good. And many circuits have. The Supreme Court has never clearly addressed it. I read your brief to act as if we had not done so and that that was— and that only the Ninth Circuit or you discussed at some length. And so I'm glad that you clarified that. Thank you. Oh, absolutely. Let's go to the polygraph first. We know why defense counsel did not file a motion in limine. Defense counsel—this came out in the state habeas hearing— defense counsel knew about the polygraph matter, went to the prosecuting attorney before trial, said, let's talk about the polygraph. Prosecuting attorney said, state's not going to get into the polygraph. So the defense said, I don't have to file a motion in limine. And the prosecutor was as good as her word. She did not get into the polygraph. That shows you why—because the prosecutor says they're not going to get into it is not a good enough reason not to do the motion in limine. Part of the reason you do the motion in limine is so you can go over it with the witnesses and say, you're not allowed to mention these things. The judge has already ruled that. And that would have been done and the witnesses would have been woodshedded before the trial. So it would have not been—certainly the prosecutor can be honorable in this, but the witnesses need to be told there are certain things the judge has ruled on you can't go into. I will say this, that there's certainly a state court finding that had the motion in limine been granted, the witnesses would have been cautioned, but it's not clear exactly by whom, by the judge or by the attorney. The state filed a motion in limine in this case in which it not only— and in connection with some mental health matters involving the defendant and some domestic abuse matters involving the defendant. And there were some hearings outside the jury in connection with these matters. The record does not show that the court or the attorney cautioned any witness about not what— so the idea that the court would actually caution a witness is not reflected in the record. I don't believe we were talking about the court doing it. We're talking about the lawyer before they put them on the stand. They remind them. I thought this does say that it would have been done. I thought there was a— There's certainly— We have to take that if they would have been cautioned by someone. That may well be. So they were not cautioned and they would have been. That's what the state court found. That's right. However, again, this situation is not the reasonableness of counsel's actions. It's the reasonableness of the state court's actions. So in this case, again, the motions in limine most often not— they're generally given not so much to control the witnesses but to control the attorneys, and that's what happened in this case. The state had a motion in limine that was granted, and the state attorney, before the state got into these questionable matters, they had a hearing outside. In this case, state counsel did not bring up the polygraph matter. And there's no evidence in this record that the prosecutor coached the boyfriend to blurt it out or anything? There's nothing like that? No, and there is an error in my brief. I said that came out on cross from the defense. So the prosecutor did not prompt— there's no evidence that the prosecutor prompted the police officer, and there's certainly no evidence, and one would assume that the defense counsel didn't question the prosecution witness about the polygraph matter. Right, but so then—so my question was, there's no evidence in the record that there was some coaching done, that be sure you blurt this out when you're answering the question. There's no— There's nothing unseemly like that in this record. There's nothing to suggest that the prosecutor coached a witness to blurt out this matter? I'm sorry, did I answer your question? You've answered my question.  Now, the attorney did object to the police officer's testimony, got an instruction to disregard, as you mentioned, more than an instruction to disregard, told not only the judge, told the jurors not only that he was supposed to disregard, but why they were to disregard. That is, polygraphs were deemed not reasonable. By the way, the record shows no one took a polygraph test. No one passed, no one failed, no one took one. Did not object to Michael Irwin. We know why he didn't object, didn't want to call attention to it. That could be a reasonable determination. When a police officer mentions a polygraph test, the juror might think, well, the police officer depends on polygraph, I should too. Michael Irwin is a mere witness, ex-con. He was not a crucial witness. He wasn't an alternative suspect. He was simply a fact witness for the events that happened on the morning in question. What do you mean he wasn't a crucial witness? He's the only one there. Isn't he the only one there besides the mother? Yes. I think if somebody killed the child, one of them did it. There's no way that an intruder did it. It's either one of them killed the child or the child died of natural causes. I think he's pretty important. The defense theory was not that Michael Irwin did it. The defense theory was that no one did anything. Right. That the child died of natural causes. So from the defense point of view, Michael Irwin was not an alternative suspect. There were no suspects. I mean, there were no criminals. No bad actors. From the defense point of view, under defense strategy. And we do not have a system in which things are either forbidden or mandatory. That which is not forbidden is mandatory. You have some things that are forbidden, some things that are mandatory. In the middle, we have a great deal of discretion to trial counsel. Trial counsel has to read the jury, has to read the witness, has to read the judge, has to read the case, has to make decisions on the fly. That's why under Richter, there's double deference. Let's go to the cartoon now. In this particular case, neither brief really explains well what happened at trial. My brief certainly doesn't. Here's the order of what happened at trial. Prosecutor had the witness on the stand. Said, do you know Charlie Wiggins? See another inmate? You in love with Charlie Wiggins? Did you send him a letter with a cartoon? Then the state says, your honor, yeah, I'm paraphrasing. You have a cartoon, we have a letter. We introduce the cartoon into evidence. The court asks, are you introducing the letter into evidence? No. The letter doesn't come in. The defense does not object to the cartoon. Then the prosecutor asked the witness, in your letter did you say? The defense objects. The prosecution proceeds without waiting for a ruling. Love is dreaming of starting a family. Quoting not from the letter, but from the cartoon. Then the prosecutor goes on to, and she says yes. Then the prosecutor asks her if she wants to start a family again. She says, if I have a chance to. The defense objects to this line of questioning. The court sustains the objection. The state goes on to another matter. So if we're talking about the objection for which there was no ruling given, after the state admitted the cartoon, the next question was, in your letter did you say? The defense objects. Thinking the prosecutor is getting ready to quote from the letter,  Then the prosecutor quotes from the cartoon, which is an evidence. So if the objection is to prevent the prosecutor from quoting from the cartoon, it's a futile objection. It's already an evidence. But wasn't that the error in not objecting and letting in the cartoon? That is. That's the error in letting in some cartoon that can be nothing but trouble for the client in the case. It's not a positive thing. Nothing good is going to come of that. We know why the attorney didn't do it. He addressed that. He said he didn't think that it was material. He didn't think it was harmful. In State habeas, he also said, one of his trial strategies was to portray the defendant as naive, gullible, and young. But the state court said that this was error. The state court said it was deficient. Right. That's deficient conduct by the lawyer. That's what the state court said. So now we need to decide. Can you go through the prejudice prong at some point in your argument on this case? Absolutely. You don't need to do it right now, but at some point I hope you will. I can do it right now. The prejudice prong would apply only to the cartoon. No deficiency was found in connection with the polygraph matter. No error was found in connection with the polygraph matter. So in connection with the cartoon, the state does not have the burden of disproving prejudice. The petitioner has the burden of proving prejudice. To the extent that the jury notes don't address the issue of prejudice, then the state wins because the petitioner has not met his burden, her burden. As I understand it, what happened was, I think I've got it for this case, the closing arguments the state hammered home on this woman needed to be stopped from having more children with this, particularly with this prisoner, Wiggins. So it isn't so much what happened right at the moment at which this thing was introduced as it was the use that was made of it in closing argument. Am I right about that? That's certainly what the petitioner argues. And the state certainly did use this cartoon, dual-edged evidence, against the petitioner. And that's what the defense attorney said at state habeas. All dual-edged evidence is going to be used against the petitioner. But it can also be used for the petitioner. And it helps demonstrate that the petitioner is young, gullible, and naive. Okay, I still, if you've answered Judge King's question, I still don't think you've gone through the prejudice analysis. You said because some jury questions didn't show that the jury was concerned about this, that they can't show prejudice. I need you to walk through prejudice, why prejudice doesn't apply. There are cases that show prejudice, that there's no prejudice here. Because it seems that if you're relying on something inappropriate in closing argument that inflames the jury, that this person is going to be a serial child murderer because they want to have more children, that that perhaps could be prejudice, I mean, that that's certainly bad. So you need to show me why this is not prejudicial. There is nothing in the record to suggest that the cartoon inflamed the jury. Well, we, okay, so therefore? No prejudice. They have the burden of proving prejudice. We would say this, if we, I'm sorry, I'm not, apparently we're not communicating. What cases do you have that show in a circumstance like this where something's used in closing argument and it could have influenced the jury that this would not be satisfactory for prejudice under, under AEDPA? Can you, can you give us some cases in similar circumstances where this was found, this type of thing is not enough? I'm not sitting here, I'm not going to be able to tell, give you Supreme Court cases suggesting that this type of material is not prejudicial. Okay, do you have any Fifth Circuit cases where we've analyzed other AEDPA situations and said this type of thing, this type of error that the lawyer made in letting in this cartoon that was used for inflammatory purposes, it doesn't have to be this type, you don't need a cartoon, you need something where the lawyer let something in and it was used and that that's not sufficient where there's enough other evidence. What you need to do is say that they would have convicted anyway. They would have convicted anyway. Explain that. Because, because they had a confession. Okay. We know also what the jury was thinking about in the jury room. It was not the cartoon. It was not Charlie Wiggins. It was not having children in the future. They were concerned about what happened in the past. They were concerned about the 911 phone call. They were concerned about the phone call that woke up the mother on the night, on the day in question. You can't say because they ask a question about something that they're not concerned about the universe of things that were argued to them and which were in evidence. You're absolutely correct. So that's not dispositive that they weren't concerned about this. Again, I would say simply that the state does not bear the burden. If the record shows nothing, then the state wins. Do you have a case that says where there's a confession that you can't meet prejudice? I'm not going to be able to sit here and quote a Supreme Court decision. Or a Fifth Circuit case where we found, following EDPA, that that didn't meet Strickland, and I'm just curious. No, I'm not going to be able to sit here. We have a lot of these cases. Absolutely, and I'm not going to be able to cite you a case here. I will say that the state court is not bound by the Fifth Circuit's jurisprudence. I'm not talking about the state court's determination. I'm talking about when we go through the Strickland analysis, we had cases where we've said that. And I understand EDPA double deference. The court issued an opinion this week all about EDPA double deference on Monday. I'm sorry, Judge. I'm not going to be able to sit here and quote you a case that says that when this type of matter comes in, no prejudice results. I'm not a Fifth Circuit. I'm not going to be able to sit here and do this. I'm going to simply rely that the state court is bound by Supreme Court precedent. Of course it is. And this court, and the federal, lower federal court, was to determine whether or not the state court's actions were reasonable in light of Supreme Court precedent. And I wish I could offer one to you, and if I had one, I'd give it to you. And if you want me, I'll even go back and research some more if you want me to. Let's go on to the cumulative error issue. Again, this court in white certainly acknowledges the concept of cumulative error. It did not grant relief on cumulative error. It granted relief in white. It found two discrete examples of counsel deficiency. Each deficiency led to prejudice. It then, in a separate paragraph, said alternatively, if there was no prejudice resulting from one deficiency, when we combine the two deficiencies, prejudice would result. Here, we have one deficiency only. There is nothing to combine it with. I would also point out that only the state court found deficiency. No federal court found deficiency. Federal courts assumed deficiency. I would also just suggest that it doesn't look like the Fifth Circuit requires cumulative error, cumulative strickland error, to be raised as a discrete issue. I would suggest that perhaps better bookkeeping practices are required to be raised as a discrete issue. That way, we don't have to sit here years after the fact debating the state court's analysis. It's my understanding that federal courts aren't generally supposed to get into state court's analysis. They look at the end result. If we had a discrete result with a separate claim of cumulative error, then for bookkeeping purposes, for no other reason, the federal court would then have the state court reasoning as to cumulative error. Who needs the better bookkeeping practice? We needed it in the circuit in our case analysis. I'm sorry. I don't understand who needs a better practice. Who is the actor that needs the better practice? In this case, for example, a federal court would then have express state court analysis on cumulative error. Okay. Who is the actor that needs to change its process? Well, the director would like it. No, I don't know who. Are you asking the court to write in this, or are you asking some lawyer? Who is it that needs to change the process to have discrete— I think the Fifth Circuit is— You're asking us to change our process. I think the Fifth Circuit is— Just say it outright what you're trying to say. You want us to say that you have to allege cumulative error as a separate point for us to analyze it. Is that what you're saying? That's what I'm saying. Okay. Thanks. Thank you. All right. Sir? Mr. Connell? Let me—I've been thinking a little bit about what you said, Justice—Judge Stewart. If you view AEDPA to require a Supreme Court case basically that's a white horse case to your particular set of facts— failure to file a motion in limine— failure to object to this— That's not what I said. I understand, but I'm saying Strickland and Wiggins were cases where the lawyer did say one thing incorrect, failed to do a mitigation investigation, put on mitigating evidence at the punishment stage of a death penalty trial. Those cases apply to a myriad of situations, and if you look at this Court's opinion in White v. Thaler, Miller v. Dretke, which are 2254d AEDPA reversals on ineffective assistance, it's the same format in those cases I'm asking you all to follow here. Now, with regard to prejudice, you can consider either one of them individually, and if you find either one of them by itself is sufficient to have met the Strickland prejudice prong, you don't have to go any further. But if you find either one of them by itself wouldn't be enough, but both of them together would be, then you would do a cumulative prejudice analysis. So let's drill down on what the prejudice was in a case where there was a confession that was vigorously contested, and in most cases they're not contested because they're videotaped. You can see the guy confessing. He's got to live with it, and it may render harmless, non-prejudicial, whatever other errors of the law you're made. Why is this case different? The key issue in this case was Keira Dotson's credibility when she testified, A, I didn't suffocate my child, and B, the detective manipulated me into falsely confessing by preying on my guilt and causing me to write that confession. The errors that the lawyer made in this case enabled the jury's determination of prejudice to be based on very inadmissible, harmful evidence, such that she wanted to have a jail inmate's child, and the jury should convict her to stop her, such that she either refused a polygraph or took and failed one, but the jury wasn't going to get to hear the result, and that her boyfriend agreed to take the polygraph. Now, in all conscience, do you believe that a prosecutor who thought that she had proven beyond a reasonable doubt that this child died from a criminal act and that Keira Dotson truthfully confessed to it, if a prosecutor really believed that, why in the world would she make the arguments she made in this case, why would she put in the evidence of the cartoon, cross-examine her about it, and then say, you've got to convict her of capital murder and send her to prison for the rest of her life so she can't have children? Well, a prosecutor who believes she had proven her case beyond a reasonable doubt would not make those arguments. She knew there was a problem with that confession because it either wasn't videotaped or the videotape wasn't preserved, and she had to fight hard to get around it, and to her credit, she was right. That jury struggled with that confession for three days. If this had been a 30-minute verdict, we probably wouldn't be here talking today. It was a three-day verdict where they say they're hopelessly deadlocked, and the only thing they're deadlocked in is the confession. That's the case. And the errors of counsel that led to the jury being able to consider polygraphs and the defendant writing a letter to a jail inmate that she wanted to have his baby, that tipped the scales, just like in White, proving that the deceased was pregnant and the fetus died, and that the defendant refused to tell his exculpatory story to the police after he was arrested. This case is very similar to White by construct, even though it's different facts, different type of errors, but if you look at the format in White that this court used to reverse, it would be the same format in this case. This confession was vigorously contested. They put on a solid expert who gave good reasons why false confessions aren't reliable and how they're obtained, and he said, I'm hamstrung here because I don't have a videotape. There is no videotape, and that's on the police and the DA's office. So, we have proven prejudice. The state court was unreasonable in both the way they analyzed it and the conclusions they reached, both as a matter of law under Strickland and as a matter of fact under those ridiculous findings that are inconsistent and go in every which direction in an effort to deny relief. This conviction is not good. This court's confidence that this conviction should not be allowed to stand by the lengths the prosecution went to obtain it, and I ask that you grant habeas corpus relief and order a new trial in state court. Thank you. All right. Thank you, Mr. Schaffey. You regrouped well to tailor your response to the question that I asked, so you had gone from shotgun to rifle shot, so you did good. Thank you, counsel, for both sides for the briefing and argument.